Good morning, my name is Deborah Barron and I represent Appellate Patrick Nelson. Mr. Nelson requests that this Court reverse and remand the District Court's order granting summary judgment with instructions to allow Mr. Nelson to amend his complaint to add his claim for medical indifference and to reopen discovery. This case involves a pro se prisoner with legitimate civil rights claims who is stymied by procedural rules at every step of the legal process. Specifically, the lower court erred in four ways, the combination of which deprived Mr. Nelson of his stay in court. First, from the get-go, Mr. Nelson's complaint was stripped of one of its strongest claims, his claim for medical indifference. During screening, the Court failed to address Mr. Nelson's medical indifference claim, although Mr. Nelson mentioned facts related to that claim at least six times in the complaint and the supporting papers. The Court also failed to explain to Mr. Nelson the deficiencies in his claim so he could potentially amend it. Then, when Mr. Nelson was proceeding with his substantially stripped down claim, the Court put up additional procedural barriers to him. It failed to issue a contemporaneous ram notice, something that requires reversal per se in all but the most exceptional cases, and by failing to rule on Mr. Nelson's motion to compel or construing that motion as a 56D motion for additional time for discovery, the Court effectively prevented Mr. Nelson from getting discovery on his remaining claim. Counsel, wasn't he provided with ram notice earlier in the proceedings? He was. He was provided with a ram notice about two years, I believe it was 21 or 22 months, before he had to answer the state summary judgment motion, but the law requires a contemporaneous notice of ram, and part of the reason for that is pro se prisoners specifically are often separated from their legal papers, and here Mr. Nelson filed many motions, both requesting counsel and, you know, sometimes motions essentially asking for advice from the Court, making clear that he had been separated from his legal papers and didn't have any of the papers submitted to him originally. So the record makes clear he didn't have the ram notice available at the relevant time, which is the time when he needed to respond to summary judgment. I've forgotten. What was the name of the case that said that it had to be contemporaneous or couldn't be too far in advance? Well, Woods is the case that addressed the contemporaneous issue. I think that's your case. That's right. I didn't remember the name, but I remember the case. I've seen that before. And they held that basically the ram case, the contemporaneous requirement was inherent in the ram decision essentially, so it is applied retroactively. So the State's argument that Woods doesn't apply is inaccurate. So counsel, there is some harmless error analysis that we would perform in this situation, correct? Correct. Looking at the nature of the claim that's presented here, what I'm trying to understand is the limiting principle in a prison. You know, prison's a dangerous place, a lot of dangerous people in a prison, and there could be all kinds of administrative decisions that could put people in danger. I mean, changing the lunch hour or changing up who gets access to the weight room or to the yard could create very dangerous situations in prisons. How do we distinguish this case from the typical prison decision case where warden's got to run a prison, warden's got to make decisions? Sometimes people get hurt because they're bad guys in prison. Why is this case different from other cases where invariably decisions are going to get prisoners hurt? Well, there's a couple things there, so I'll take them in order, but first I should say I forgot to reserve any time. I'd like to reserve four minutes for rebuttal. Your first question was about harmless error. The harmless error analysis applies here only to the RAND notice, and so that basically is a review of whether an objective review of the record shows that Mr. Nelson had a complete and total understanding of the Rule 36 requirements. And if we were to say we thought he did, then we would have to reach the merits of what he presented in this case, correct? Correct. I mean, you can remand solely on the RAND notice. However, we are asking for a reversal of the summary judgment and to reopen the case for discovery and to amend the complaint. So to reverse summary judgment, let's go back to my question. How do we distinguish this case from the typical prison decision where some prisoner's going to be unhappy with it and may lash out at another prisoner? The situation here involved a prison strike, and the conflict at the heart of the case is whether or not the prison can order prisoners to make a choice between safety and disobeying a prison order. And here, we're not asking you to rule on the merits, obviously. It's whether or not Nelson provided sufficient evidence to survive summary judgment. And here, Captain Peck, who is the individual who issued the order, there is evidence in the record showing that he himself believed that he could not guarantee prisoner safety at the time he issued the order. There's also substantial evidence, which the district court ignored entirely in making its summary judgment ruling, from prison staff. And prison staff repeatedly told Captain Peck that they feared for the prisoner's safety. They felt the environment was unsafe. They refused to follow his order and give prisoners, excuse me, I think that's me getting too close here, and staff refused to follow his order, saying that the order would inadvertently endanger the life of prisoners. So what you have here is just a narrow question, which is did Nelson present evidence sufficient to establish a material question of fact as to whether or not the order created serious risk of harm to prisoners? So you would analogize this to the Tenth Circuit case, hanging the snitch jacket on somebody, effectively. Yes. And here, we also have the Edwards case. You're down to three and three-quarter minutes. Thank you. You can answer the question. I think the best case to look at is Edwards, because Edwards is based on substantially the same facts. And there, the court basically looking at the same evidence, nearly the same evidence presented by Mr. Nelson, and evidence of the prison's actions, both at the time of the strike and post-strike, held that there was a material question of fact as to whether there was deliberate indifference in issuing an order that both endangered prisoners, forced them to make a choice, and it wasn't clear that there was a penological justification for parading prisoners, strike-breaking prisoners in front of their brethren, who are yelling death threats at them. It's not clear that there was a question of fact as to whether there was a penological justification for that. Thank you, counsel. Good afternoon, Your Honors, and may it please the Court. My name is Jill O'Brien, and I represent Defendant Captain Stephen Peck. This Court should affirm summary judgment for Captain Peck, because he did not violate Mr. Nelson's Eighth Amendment rights. Mr. Nelson admitted at his deposition that he had no intention of crossing the picket line because he was ill. Because he had no intention of going to work, he didn't face an objective risk to his harm. In addition, Captain Peck, and many other prison staff, took a number of steps to ensure inmate safety. It's all in the record. Captain Peck's counterpart, Captain Neuring, surveyed over 130 inmates about potential threat. The facility was placed on a modified program, which limits inmates' movement and their opportunity to access other inmates. That restriction was only incrementally lifted, and the officers followed up on those survey responses, personally interviewing inmates who said there might be a threat to harm. These steps do not show deliberate indifference to safety. Captain Peck did not have the subjective intent required to violate the Eighth Amendment. Summary judgment for Captain Peck should also be affirmed, because this Court held in Labattad v. Corrections Corporation of America, that where the record makes it clear that a plaintiff understands Rule 56, the failure to give a contemporaneous RAND notice is harmless error. Here, Judge Berzon gave the RAND notice upon ordering service on the defendants, but did not give it again upon defendants' motion for summary judgment. How long was it between the time the notice was given and the time summary judgment was decided? April 2010 to November 2011, so quite a while. But in the meantime, Mr. Nelson moved for summary judgment himself, Your Honor, and in that motion he laid out the standard. He cited the three United States Supreme Court cases decided in 1986 that outlined the summary judgment standard. He provided affidavits signed by witnesses and a considerable declaration of his own. And when he opposed defendants' motion for summary judgment, he cited Rule 56, cited the evidence that he'd need to overcome the motion, and more importantly, he applied the Rule 56 analysis to the material in the record. He took issue with many of defendants' facts in the Statement of Undisputed Facts. He cited to the witness declarations he provided in support of his own motion, and he showed that he knew how to apply the standard to the material in the record. Because Judge Berzon's failure to issue a contemporaneous Wran notice was a harmless error under Labattad, this Court should affirm on that basis. Mr. Nelson takes issue with the fact that Captain Peck admitted he couldn't guarantee inmate safety, but any other statement by Captain Peck would have been untruthful. The United States Supreme Court recognized in Farmer v. Brennan that prisons are volatile places, and what is expected of officers is to take reasonable steps to ensure reasonable safety. No officer can ensure or guarantee the safety of inmates. The prison work strike was not an inconvenience for Captain Peck. Mr. Nelson claims that Captain Peck ordered inmates to work simply so he could write them up for a rules violation, but the rules require inmates to work for an important reason. The prison is responsible for providing food and medical care to over 3,000 inmates. If inmates are not available to prepare meals, for example, officers have to do it, and those are the officers who would be escorting inmates to medical appointments or to visits. The record here talks about that medical staff had to conduct rounds in different buildings every hour and a half to deliver diabetic medication to other inmates. Here, Captain Peck was enforcing important prison rules, not simply trying to write up inmates. Captain Peck worked with inmates on the Men's Advisory Council before the work strike and during the work strike to try to negotiate with inmates and resolve the issue. The fact that the prison used the Men's Advisory Committee representatives, conducted inmate surveys, follow-up interviews to assess the threats, these are all steps that the prison took, reasonable steps to ensure inmate safety. Captain Peck did not violate the Eighth Amendment Captain Peck would also be entitled to qualified immunity. Oh, the district court didn't reach that issue, did it? That's right, Your Honor, but this court can affirm on any basis supported by the record. And this court in Grossman v. The City of Portland found it important whether a defendant is following a regulation. Here, Captain Peck was enforcing the Title 15 regulations. He was not the plainly incompetent or someone violating the law knowingly. He was enforcing important prison regulations to ensure that the prison ran smoothly so that the 3,000 other inmates could receive food and medical care. Don't you think that that would have been important to flesh out, and aren't those important factual findings that the court needed to develop? No, Your Honor, the record is replete with the steps that the officers took after the work strike started and even leading up to it to work with the Men's Advisory Council. The incident report gives a great bit of detail about what actions were taken, so I believe this court has the information it needs to decide qualified immunity. And were there any affidavits on the other side? There were, Your Honor, four at least, and Mr. Nelson submitted his own declaration. And he cited to those when he opposed... And he also wanted to take more discovery. He served interrogatories the day before the close of discovery. His claim that he didn't know about the discovery procedure until his deposition is not supported by the record. But counsel, he continued to request assistance of counsel on numerous occasions. And isn't that sufficient basis for us to indicate what his thinking is or understanding of the procedures and certainly Rule 56? No, Your Honor, because Mr. Nelson repeatedly said he needed counsel to conduct discovery. He was aware of the process, and Judge Berzon's scheduling order went above and beyond the rules of civil procedure and laid out exactly how many requests for production and requests for admission he would be allowed. And Mr. Nelson's assistant, an inmate helping him, testified in the record that he read Mr. Nelson that scheduling order, specific to the number of requests for admission, the number of interrogatories, and the number of document requests. Mr. Nelson repeatedly asked for counsel because he said he needed help conducting discovery. Three days before the close of discovery, he had his deposition taken. He claims that this is the first time he knew he could conduct discovery, but that conflicts with the record and what Judge Berzon had told him previously. His response to Judge Berzon's scheduling order was also not logical. Because Judge Berzon's scheduling order was clear that any supplemental response to discovery also had to be done by October 3rd. So for Mr. Nelson to read that responses had to be in, he would know that his request had to be in as well. Mr. Nelson faults Judge Berzon for screening out a deliberate indifference to medical claim, but the complaint was clear. It outlined three claims. The first one was attempted murder, which Judge Berzon liberally construed as a deliberate indifference claim against Captain Peck for encouraging Mr. Nelson to work. The two other claims were for falsifying documents and destroying evidence. Mr. Nelson did not include a claim for deliberate indifference to medical care. He mentions his MRSA and alleged gangrene infection in a section where he asks for emotional distress damages of $25,000. And he says, I quote, they were allowed because he had this physical problem. He's aware that he can't get emotional distress damages without a physical injury. This was the mention of his medical care. His three claims in the complaint did not include these. As a factual matter, Mr. Nelson never intended to go to work. He said in a response to a grievance in prison, I quote, those who crossed the picket line are not safe. I was ill and thank God, so I wasn't forced into that situation. Mr. Nelson was not forced to choose between an objective risk to his safety and not. Captain Peck acted reasonably and is entitled to summary judgment. Thank you. Thank you. I will just make a couple of points on my limited time here. The first is at the very least, the court should reverse to allow Nelson to add his medical indifference claim. A look at the complaint, she is correct that he didn't plead a deliberate indifference to harm claim as well. It's a pro se complaint. But when you read the complaint, there is no dispute that he mentions the failure of medical care. There are at least six places that he discusses it in the complaint and the supporting papers. And the state has argued in its papers that this was precluded by another case. However, that is incorrect because the factual basis here is different. The other case involved Mr. Nelson had an infection and he was sent to be treated for that infection. And they gave him the wrong medicine. And that is what the original case was about. This case involves what happened during the strike, which is the wrong medicine led him to have MRSA and gangrene. He had the wound treated and dressed. Then during the strike, he was under medical orders for how the wound needed to be treated. And he wasn't given proper medical care and the MRSA and the gangrene returned. And eventually he was forced to have emergency surgery where he almost lost a portion of his stomach. And so Mr. Nelson doesn't raise expressly a medical indifference claim, but there is enough in here. And given the liberal pleading requirements for prisoners and the fact that this district and courts regularly remand when courts have failed to liberally construe or at the very least inform prisoners that they potentially have a claim based on the facts that they have failed to develop. And that is what we have discussed. Was Mr. Nelson disciplined for failure to report to work? He was. And so when the state was saying he wasn't actually sick, the state should be precluded from saying that because they took the previous position in the proceedings below. And the prison disciplined him because they didn't believe that he was sick. And more importantly, it's looking at what was happening at the moment. And at the time, one of the basis for the strike was that it was kind of a sick out. And so Mr. Nelson had reason to believe that even though he actually was really sick, so sick that he required emergency surgery shortly thereafter, that his claim of being sick wouldn't be believed. So he was forced into the same position as every other prisoner. They had to choose between disobeying a direct court order or being paraded before their colleagues as a strike breaker and missed open death threats. So the other thing I would like to say is that the nothing that the state has said about the facts in the case change the fact that those are disputed facts that give rise to a material question as to whether or not what the prison did here was reasonable. And I think the court should look to the Edwards decision there.
judges: Reinhardt, Owens, Mendoza